

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

APACHE PARK LAND & CATTLE
CO., ET AL.,

        Plaintiffs,

vs.

                                No. CIV 03-0237 BB/LCS

ALFREDO MIRABAL,

        Defendant.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff submits the following proposed findings of fact and conclusions of law:

### Findings Of Fact

1. Plaintiff Apache Park Land & Cattle Co., Inc. is a Colorado Corporation closely held by Plaintiff Richard K. Sears, a citizen and resident of Colorado.

2. Defendant Alfredo Mirabal is a citizen and resident of New Mexico.

3. Defendant Alfredo Mirabal owns land that lies entirely within New Mexico.

4. Sears engages in the business of organizing, provisioning and guiding game hunts in New Mexico.

5. Sears has conducted this business as "Apache Park Land & Cattle Co., Inc.," for the past twelve years, and at all times pertinent to this action.

6. New Mexico law permits owners of private property located in New Mexico big game management units to lease their lands to private hunting outfitters to facilitate hunting for elk and other game. Each property owner is awarded a certain number of

licenses by the New Mexico Department of Game & Fish, and those licenses may be assigned to the outfitter-lessor of the leased property.

7. The Department also awards licenses to individual hunters via a lottery system. Those hunters may use those licenses on leased private property if the private property is within the area in which the hunter is authorized to hunt, and if s/he is permitted to hunt on the private property by the property owner or authorized agent, including under the terms of a lease of the private property to a outfitter-lessee as authorized agent.

8. When such lease arrangements are made by knowledgeable and experienced outfitters such as Sears, the kind of lease arrangement described above can be highly remunerative to both the landowner and the outfitter.

9. On December 12, 1999, Sears entered into a lease arrangement with Defendant landowner-lessor Alfredo Mirabal.

10. Paragraph 5 of the lease provided that it was to terminate on December 31, 2002.

11. Paragraph 10, however granted Sears a renewal option.

12. Long before December 31, 2002, Sears had decided that he would exercise the renewal option.

13. During the 2002 hunting season Sears represented to current clients that they would be able to hunt elk on the Mirabal property during the 2003 season.

14. Sears also represented to past and prospective clients that such hunts would be available for the 2003 season.

15. During the 2002 season a substantial number of these past, then-current, and prospective clients indicated serious interest in returning for a 2003 hunt, or in recommending such a hunt to others.

16. The property involved in the lease is of uniquely high quality for elk-hunting purposes; Sears had no way to find and lease an equivalent property at an equivalent price for a comparable period of time.

17. On December 10, 2002, well within the option period, Sears gave Mirabal due and proper notice of his election to exercise his option to renew the lease.

18. When Sears gave notice, and at all other pertinent times, Sears was in full compliance with all of his obligations under the lease, and with all conditions precedent.

19. Defendant Mirabal refused, and continues to refuse, to acknowledge the validity and binding effect of Sears' election to exercise his renewal option.

20. Based on prior dealings with the Defendant, Sears is concerned that Defendant's refusal to acknowledge that the lease has been renewed may indicate that Defendant is dealing with, and/or intends to deal with, other potential lessees and/or licensees instead of Sears.

21. Sears received significant numbers of reservation requests and accompanying non-refundable deposits for the 2003 hunting season. Due to the lease controversy, the requests could not in good faith be granted.

22. New Mexico big-game hunting opportunities are in great demand among hunters nationwide. Every day that Sears cannot book hunts in good faith means that

— 3 —

prospective clients will go elsewhere to ensure their ability to participate in this much-coveted opportunity—an opportunity that is scarce because the number of participants statewide is strictly limited by New Mexico law and regulations.

23. Defendant continues to deprive Sears of his renewal rights under the lease. To date Sears has sustained economic losses of more than $75,000 exclusive of interest and costs. These economic losses are difficult to calculate precisely under these unusual circumstances.

24. Moreover, Sears' failure to deliver on representations he has already made in good-faith reliance on his renewal option (at a time when he had no reason to think that Defendant would not honor it), has caused him reputational loss and consequent incalculable economic opportunity losses.

### Conclusions of Law

1. This Court has jurisdiction under 28 USC § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

2. Venue is proper in this District under 28 USC § 1391(a) because this is a civil action wherein jurisdiction is founded only on diversity of citizenship, and is being brought in a judicial district where the sole Defendant resides, and in which the property that is the subject of the action is entirely situated.

3. Defendant has no reasonable or rational basis for refusing to honor Sears' lease renewal.

4. The refusal was, and continues to be, maliciously intentional, oppressive, reckless and in wanton disregard of Sears' renewal rights.

5. The December 10, 2002, renewal notice is valid and binding upon Defendant.

6. Defendant is liable to Sears for direct, incidental, consequential and punitive damages and costs for bad-faith breach of contract.

7. Sears is also entitled to recover his costs.

8. In addition to the economic damage that Defendant's conduct has caused, that conduct has led Sears to experience grave concerns and severe emotional distress over the impact of Defendant's conduct upon Sears' his economic future.

9. Defendant is therefore liable to Sears for damages, including punitive damages, for tortious interference with the business advantage conferred upon Sears by virtue of his lease renewal rights, if those rights had been timely and properly honored by Defendant. Defendant is also liable to Sears for his costs.

Respectfully,

Herbert M. Silverberg
318 Solano Drive, S.E.
Albuquerque, New Mexico 87108-2650
(505) 265-6565
Attorney for Plaintiffs

Certificate of Service

I certify that on April 19, 2004, I served copies of this pleading on Daniel M. Salazar, Esq., by causing copies to be mailed first-class postage prepaid, to him at Post Office Box 1367, Albuquerque, NM 87103-1367.

_____
Herbert M. Silverberg